UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NATHAN L. ROBINSON, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 2:13-cv-73-AKK |
| | } |
| CON-WAY FREIGHT, INC., | } |
| | } |
| Defendant. | } |

# MEMORANDUM OPINION

Nathan L. Robinson filed this lawsuit against his former employer Con-way Freight, Inc. ("Con-way"), alleging that Con-way discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and § 1981 of the Civil Rights Act of 1866 ("§ 1981") when it discharged him in response to an alleged threat Robinson made against a co-worker. Doc. 1. Before the court is Con-way's motion for summary judgment, which is fully briefed and ripe for review. Docs. 15–17, 19–21. For the reasons set out fully below, Con-way's motion is due to be granted.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits

1

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Id*. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (*per curiam*) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

## II. FACTUAL BACKGROUND

A. *Con-way's Policies*

Con-way has various policies that address work place conduct. Relevant to this case, under the conduct policy, fighting or horseplay, including "physically or verbally attacking another person; or engaging in other disorderly conduct or verbal abuse which, although innocently done, may result in injury or insult to another; or causing or contributing to disruption of the workplace," is "unacceptable" and may subject an employee to discipline including termination. Doc. 17-2 at 22. Con-way is "committed to providing a safe, violence-free workplace," and has "adopted a No Threats or Violence in the Workplace Policy" that "strictly prohibits employees . . . on Company property . . . from behaving in a violent or threatening manner." *Id*. at 28. With respect to discipline, Con-way does not follow a rigid disciplinary system, noting that

> [i]t is impossible to predict or list every situation that will require some form of corrective action or even termination. Each case involves its own particular facts and circumstances, and in every case the company must take the action that it considers appropriate. Such actions might include oral warnings, incident reports, written letters of instruction, disqualification from assignment, suspension or termination of employment.

*Id.* at 24. Importantly, "the disciplinary process may be initiated at any step depending on the seriousness of the offense and the appropriateness of the imposed disciplinary action." *Id*.

*B. Robinson's employment history*

Con-way re-hired Robinson as a supplemental driver/sales representative in May 2002, and subsequently promoted him to a regular position.[1] Doc. 17-1 at 4-5; 17-5 at 4. During his employment, Robinson received multiple disciplinary actions, including two verbal counseling sessions and twenty-five letters of instruction. Doc. 17-2 at 35–77. Six of the letters of instruction were for performance violations, and the rest were for conduct or policy infractions. *Id*. at 45, 47, 48, 49, 54, 68, 73. The only performance evaluation in the record is from 2007. In it, Robinson received a satisfactory evaluation, which described him as "a good worker," and awarded him scores of 4 (higher range) or 5 (outstanding) in all seven categories except dependability, in which he received a 2 (lower range). Doc. 20-4 at 2–5. The 2007 evaluation also indicated that Robinson's evaluations from the previous three years had ranged from average to satisfactory. *Id.* The next year, in 2008, Robinson was involved in "horseplay" with another employee that escalated to insults about each other's wives, but ended "before it became more than word[s]." Doc. 17-4 at 18. Apparently, Con-way took no corrective action.

---

[1] Robinson worked for Con-way in 1999 in the same position, but resigned after sixteen days for personal reasons. Docs. 17-1 at 4; 17-5 at 4.

*C. The incident leading to Robinson's discharge*

In September 2011, an employee reported to Timothy Grant, Service Center Manager, that Michael Thomas verbally assaulted him, and that Thomas was also involved in an altercation with Robinson in April 2011. Docs. 17-3 at 6; 17-1 at 64. An investigation ensued that involved Grant meeting with Thomas and Robinson to obtain statements about the incident. Doc. 17-3 at 7. For his part, Robinson said the incident started when Thomas jokingly asked Robinson where his "girl" was, and that when Robinson quipped back that she was "probably with the same person that's with [Thomas's]," Thomas became upset and approached Robinson with a Leatherman tool, which prompted Tim White to intervene and instruct them to return to work. Doc. 17-1 at 65, 66. According to Thomas and White, Robinson and Thomas made threatening gestures when they jumped off of their forklifts and approached each other, causing Thomas to feel threatened and pull out the Leatherman tool. *Id*. at 7-8, 9; docs. 17-2 at 78; 17-4 at 12–13; 17-5 at 15–16, 18.

Grant forwarded the results of his investigation to Jerry McGlown, a Human Resources Generalist, who instructed Grant to place Robinson and Thomas out of service. Docs. 17-3 at 11; 17-4 at 5. Thereafter, McGlown forwarded Grant's notes to the Human Resources Department with a recommendation that Con-way discharge Robinson and Thomas. Doc. 17-5 at 6. Human Resources accepted the recommendation and discharged both men. *Id.*at 4, 6; doc. 17-1 at 69.

Robinson appealed the decision to the Employee Termination Review Board ("ETRB"), which consists of three members of executive management. Docs. 17-2 at 79; 17-5 at 7. According to McGlown, who listened in to the telephone hearing, Robinson "refused to admit that he engaged in any wrongdoing," "attempted to minimize the altercation between him[self] and Mr. Thomas," and "failed to express any remorse for his actions." *Id*. at 7–8. The failure to admit fault or to express remorse, as well as an employee's disciplinary history, are factors the ETRB considers in deciding whether to overturn a discharge: "In determining whether to uphold a termination decision, the ETRB considers several factors, including the circumstances surrounding the termination, the employee's disciplinary record, the employee's admission of misconduct and the employee's remorsefulness for his actions." *Id*. at 7. In Robinson's case, the ETRB upheld the discharge decision. *Id.* at 8. This lawsuit ensued.

### III. ANALYSIS

Title VII and § 1981 claims "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Therefore, the court "explicitly address[es] the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." *Id.* Generally, "[a] plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof."

6

*Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008). Where, as here, a plaintiff offers only circumstantial evidence, the court evaluates the sufficiency of his claim through the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. "The successful assertion of a prima facie case then creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff." *Rioux*, 520 F.3d at 1275 (internal quotation marks and citations omitted). The burden then shifts to the employer to produce evidence that it had a legitimate non-discriminatory reason for the challenged action. *Id*. If the employer satisfies its burden, the burden shifts back to the plaintiff to "show that the proffered reason really is a pretext for unlawful discrimination." *Id*. (internal quotation marks and citations omitted).

Con-way contends that Robinson's *prima facie* case fails because Robinson cannot establish that he was qualified for his position or that Con-way treated him less favorably than similarly situated employees outside of his protected class. Alternatively, Con-way asserts that it is due to prevail because Robinson cannot establish that Con-way's articulated reason for the discharge is pretextual. The court will discuss Con-way's contentions below.

7

### A. *Robinson was qualified for his position*

To establish that he was qualified for his position, Robinson must present evidence that he "satisfied [Con-way's] objective qualifications." *Vessells v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2002) (citation omitted). A Title VII "'plaintiff's burden in proving a prima facie case is light.'" *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1246 (11th Cir. 2001) (quoting *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998)). The only evidence in the record that speaks to Robinson's job performance is his 2007 employee review, which describes him as "a good worker," awarded him largely above-average scores, and indicated that his three previous annual evaluations classified him as an average to above-average worker. Doc. 20-4 at 2–5. In the absence of any evidence to the contrary concerning Robinson's *performance*, the 2007 review is sufficient to present a *prima facie* case that Robinson was qualified for his position.

Con-way contends that Robinson was not qualified for his position because of his extensive disciplinary record.[2] Doc. 16 at 18–19. Robinson was certainly not an outstanding employee. In fact, his record is replete with disciplinary actions.

---

[2] Con-way cites *Baker v. Sears Roebuck & Co.* for the proposition that "where a [p]laintiff repeatedly fails to meet the employer's performance expectations over an extended period of time, she [is] not qualified for her job and therefore cannot establish a *prima facie* case of discrimination." Doc. 16 at 18 (citing 903 F.2d 1515, 1520–21). *Baker* is distinguishable from the present matter for two reasons. First, in *Baker*, the defendant was dissatisfied with the plaintiff's ability to perform her job duties; here, Con-way largely took issue which what it characterizes as misconduct on Robinson's part. Second, in *Baker*, the plaintiff's long-established failure to meet performance expectations was the direct cause of the defendant's decision to take adverse employment action against her; Con-way initiated discharge proceedings against Robinson because of the altercation between Robinson and Thomas.

However, despite this extensive record, there is no evidence that Con-way ever initiated *any* action to discharge Robinson prior to the incident at issue here. Put simply, Robinson's continued employment belies Con-way's contention that Robinson was not qualified for the position he held. *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010) (quoting *Owens v. N.Y. City Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) (noting that "there is a distinction between unsatisfactory job performance and misconduct . . . 'misconduct may certainly provide a legitimate and non-discriminatory reason to terminate an employee,' but that issue is distinct from 'the issue of minimal qualifications to perform a job'").

   B.  *Con-way did not treat Robinson less favorably than similarly situated employees*

Con-way challenges Robinson's prima facie case next by asserting that Robinson cannot establish that it treated him less favorably than similarly situated employees. Doc. 16 at 23. When, as here, a plaintiff relies on circumstantial evidence to prove his discrimination claims, the comparators the plaintiff cites "must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004).

As alleged comparators, Robinson identifies David Brassfield, Bernie Brown, Shawn Skellet, Erica Davis, Kim Thompson, and Mike Blevins. Doc. 19 at

10–14. However, only one of these individuals—Brassfield—engaged in any conduct remotely similar to Robinson's. The rest of the individuals engaged in infractions that are simply not "nearly identical" to Robinson's. Specifically, Robinson contends that Con-way (1) failed to discharge Brown for stating he was not going to be "worked like one of these push button [niggers],"[3] doc. 17-1 at 57; (2) failed to discharge Skellet for allowing his six-year old son to sit in a fork lift in violation of company policy[4], doc. 17-1 at 90–91; (3) failed to discharge Davis and Thompson for stealing time, docs. 17-1 at 80; 17-3 at 16-17; and (4) failed to discharge Blevins for testing positive for alcohol, docs. 17-1; 17-3 at 21. Unfortunately for Robinson, although this alleged conduct constitutes serious infractions and should be addressed by employers, these individuals are not proper comparators because their infractions are not "nearly identical" to Robinson's threats of violence, and consequently, the court cannot consider them as examples of disparate treatment. As the case law has instructed repeatedly, the infractions must be "nearly identical" to prevent the court from "second-guess[ing Con-way's]

---

[3] Robinson admits that he did not hear Brown make the purported comment and that he is relying on hearsay relayed to him by Drayton Davis, a Con-way driver. *Id.* Unfortunately for Robinson, "Rule [56(c)(4)] of the Federal Rules of Civil Procedure requires that 'affidavits' that support or oppose summary judgment motions 'shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence.' This rule also applies to testimony given on deposition." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). The absence of direct knowledge on Robinson's part or evidence to show that his account of Davis' statements will fall under one of the hearsay exceptions precludes the court from considering it—even if the alleged conduct were "nearly identical" to Robinson's threat of violence.

[4] Even viewing the facts in a light most favorable to Robinson, the record fails to support Robinson's claim because he admits that he does not know if Con-way disciplined Skellet in response to Robinson's allegations. Doc. 17-1 at 91. Without more, this conjecture and speculation is insufficient to defeat summary judgment. *Ellis*, 432 F.3d at 1326.

reasonable decisions and confus[ing] apples and oranges." *Burke-Fowler v. Orange Cnty., Fla*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citations omitted). To find fault with Con-way's purported failure to discipline these employees would result in the court acting as a super-personnel board and imposing its views on purported best human resources practices on Con-way—in direct contravention of the case law. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)) ("[Courts] do not sit as a 'super-personnel department,' and it is not [their] role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive."); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) ("[F]ederal courts do not sit to second-guess the business judgment of employers.").

The court turns its attention now to Brassfield, who is the only comparator Robinsons cites that made a threat of violence. Con-way discharged Brassfield "[o]n March 1, 2008 . . . for violat[ing] . . . company policy. Specifically, Mr. Brassfield told another employee, who was his relative, that if he had a gun and did not believe in God, he would kill management." Doc. 17-5 at 8. Brassfield successfully appealed his discharge to the ETRB, docs. 17-1 at 73; 17-3 at 15, and his reinstatement is the basis for Robinson's contention of disparate treatment.

11

Unfortunately for Robinson, Brassfield is not a proper comparator because, unlike Robinson, Brassfield admitted during his ETRB hearing that he made the threat and apologized. Doc. 17-5 at 9. In light of his admission and apology, and based also on Brassfield's employment history—he had received only one letter of instruction during his nineteen years of employment— the ETRB reinstated Brassfield. *Id.* at 8. In contrast, Robinson never acknowledged his conduct or expressed remorse, *id.* at 7, and had at least twenty-five letters of instruction during his nine-year tenure, *see* doc. 17-2 at 35–77. Because the ETRB considers "the employee's disciplinary record, the employee's admission of misconduct and the employee's remorsefulness for his actions," doc. 17-5 at 7, "in determining whether to uphold a termination decision," *id.*,—all of which weigh against Robinson, the court simply cannot find that Robinson is similarly situated to Brassfield, or that Con-way treated him less favorably than Brassfield when it denied his appeal. *See Wilson*, 376 F.3d at 1092 (11th Cir. 2004) (quoting *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000)) ("The role of [courts] 'is to prevent unlawful hiring practices, not to act as a super personnel department and second-guess employers' business judgments.'")

In short, Robinson has failed to establish a *prima facie* case because he cannot show that Con-way treated him less favorably than similarly situated

employees outside of his protected class. Therefore, Con-way's motion for summary judgment is due to be granted.

*C . Robinson points to no evidence from which a fact-finder could determine that he was discriminated against due to his race.*

Alternatively, even if Robinson can make a *prima facie* case, summary judgment is still warranted because Con-way proffered a legitimate non-discriminatory reason for it's the discharge, i.e. Robinson's perceived threat of violence, which Robinson failed to rebut. Robinson "must meet the reason head on and rebut it, and [ ] cannot succeed by simply quarreling with the wisdom of [Con-way's proffered] reason." *Chapman*, 229 F.3d at 1030 (citations omitted). Because the evidence establishes that Con-way acted reasonably in concluding after its investigation that Robinson threatened Thomas and because the individuals Robinson identified are not proper comparators, Robinson cannot show that Con-way's articulated reason for his discharge is pretextual. Ultimately, "an employer can fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *See Nix v. WLCY Radio/Rahall Comm's*, 738 F.2d 1181, 1187 (11th Cir. 1984); *Wallace v. SMC Pnuematics, Inc.*, 103 F.3d 1394, 1399 (7th Cir. 1997) (listing perceived threats of violence as a non-actionable reason under Title VII). While Robinson may think his discharge was unfair, under the circumstances here, Con-way acted as a prudent employer by addressing a threat in the workplace,

immediately taking Robinson (and Thomas) out of service, and conducting an investigation to provide the necessary measures to protect employees. *See Kelley v. Worley*, 29 F. Supp. 2d 1304, 1313 (M.D. Ala. 1998) ("Under the common law, an employer has a duty to supply the employee with a reasonably safe place to work.") (citation omitted). Therefore, the court cannot draw an inference of discriminatory animus, and, Robinson's discrimination claim must fail.

## IV. CONCLUSION

Con-way's motion for summary judgment is due to be granted in light of Robinson's failure to establish a *prima facie* case or to rebut Con-way's articulated reason for discharging him. The court will dismiss this case by separate order.

**DONE** the 25th day of September, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE